SCHOTT, Judge.
These consolidated cases arose out of an automobile accident which occurred in December, 1964, at the intersection of Veterans Highway and Division Street in Jefferson Parish. Plaintiff’s husband, Edmond P. Snell, and her father, who was a passenger in the automobile driven by Snell, were both killed in the accident.
Plaintiff brought suit for the death of her husband against Mrs. Mercedes Stein, the driver of the other automobile involved in the accident, her insurer and the Parish of Jefferson’s insurer. She brought suit for the death of her father against the same defendants as well as Snell’s insurer. From a judgment dismissing her suit for the death of her husband, and awarding her only $7500 for the death of her father against Mrs. Stein, her insurer and Snell’s insurer, plaintiff has appealed. She takes issue with the trial court’s dismissal of her suit for the death of her husband against the Parish of Jefferson’s insurer and the quantum of damages awarded for the death of her father.
Snell had been proceeding south on Division Street and came to a stop at the intersection with the Veterans Highway in obedience to a red light. While the light was red he began to cross the westbound side of Veterans Highway and his automobile was struck broadside in the middle lane of the Veterans Highway by the automobile driven by Mrs. Stein. Plaintiff contends that the proximate cause of the accident was not the negligence of her husband but that of Parish officials Who designed a misleading traffic signal plan for the intersection.
Veterans Highway, at this point, runs east-west and consists of 36 feet wide roadways divided into three lanes on each side of a median approximately 130 feet wide. Division Street, consisting of two lanes of traffic, intersects at right angles. Near the intersection with Division a stacking lane is cut into the neutral ground for westbound Veterans Highway traffic in order to facilitate left turns. The semaphore signal system consists of a signal light mounted on a pole located in the northwest corner of the Veterans Highway median east of Division Street, immediately adjacent to the westbound stacking lane of Veterans. This light, hereafter referred to as No. 1, faced southbound traffic on Division Street and westbound traffic on Veterans. Suspended from a wire in the middle westbound lane of Veterans and the southbound side of Division, and facing westbound and south *524 bound traffic, was light No. 3. On the northeast corner of the median west of Division was a signal light mounted on a pole facing westbound traffic in the stacking lane of Veterans Highway (No. 4). Finally, there were two signal lights (Nos. 5 and 6) suspended on a wire on the eastbound side of the Veterans Highway south of the median and hanging across Division Street. These signals faced southbound traffic on Division Street.
In the regular cycle for these various signal lights, when lights 1, 3, 5 and 6 displayed red lights for southbound traffic on Division Street, light 3 displayed a green light for traffic on the Veterans Highway. However, the signals went into a special phase, activated when a westbound vehicle entered the stacking lane on Veterans Highway, wherein light 4, normally displaying a red light, changed to a green arrow pointing left and permitting such westbound vehicles to make a left turn across the median and head south across the eastbound lanes of Veterans. At this point signals 5 and 6 turned green to permit that left turning. In the meantime, lights 1 and 3 remained red for southbound traffic on Division Street, and light 3 remained green for westbound traffic on Veterans.
Plaintiff’s theory is that Snell stopped for the red light on signal 3. While stopped the left turning scheme was activated with the result that lights 5 and 6 turned green, and because of Snell’s position under light 3, the dominant signals as far as he was concerned were lights 5 and 6 so that it was a natural, normal response on Snell’s part to cross over, notwithstanding that light 3 was green for the Veterans Highway with the result that Mrs. Stein’s automobile struck Snell’s.
The trial judge found that Snell proceeded against the red light constituting negligence on his part. He found further that plaintiff did not establish that the installation of the signals deviated from acceptable standards governing traffic engineering principles. He also found that even if the Parish had designed and installed a traffic controlled system at the intersection which was confusing and dangerous the plaintiff failed to establish that this was a proximate or a contributing cause of the accident.
The record supports these conclusions, so that there is no basis on which to reverse the trial court.
In the first place, the key witness was a motorist who stopped behind Snell on Division Street and testified that light 3 was red and Snell entered the intersection in the face of that red light. This witness did not testify that he saw lights 5 and 6 turn green before Snell crossed over. The only way these lights could turn green was with the left-turning scheme being activated by a left-turning motorist from Veterans Highway and there is no evidence in the record to show that this happened. In order for plaintiff’s theory to have any validity or application to this accident it would be necessary to engage in speculation as to lights 5 and 6 turning green. Secondly, there was a large sign on the neutral ground of Veterans Highway facing Snell to the right of Division Street which commanded him to move only when the light nearest him was green. He had stopped, or he should have stopped, at a time when he knew or should have known that light 3 was nearest him, so that his moving across the highway in disregard of light 3 constituted a violation on his part regardless of what lights 5 or 6 might have shown. Third, whether he could see light 3 with ease or not light 1 on the neutral ground to his left was red, even assuming that 5 and 6 were green. It was, or should have been, obvious to him that light 1 was nearer to him than lights 5 and 6. By moving across the intersection he violated the command of the sign to his right. Fourth, for plaintiff to prevail she not only had to prove some negligence on the part of the Parish but she also had to exculpate her husband from contributory negligence in moving across the intersection in face of lights 1 and 3 which were both red. Fifth, Snell was familiar with this intersection, having traveled this route many times. Even if the signal plan were confusing to someone un *525 familiar with it, it should not have been confusing to Snell. We have concluded as did the trial judge that plaintiff did not carry her burden of proof to establish that negligence on the part of the Parish and in any event she is barred from recovery by the contributory negligence of her husband.
As to the quantum of damages awarded for the death of her father, we cannot say that $7500 to this 33-year old plaintiff for the loss of her 59-year old father constitutes an abuse of the much discretion afforded the trial judge in awards for general damages. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977).
Accordingly, the judgment appealed from is affirmed at plaintiff’s cost.
AFFIRMED.
BEER, J., concurs with written reasons.